WILLIAM M. MILLER (SBN: 216289)
    Email: wmiller@buchalter.com
MANCY PENDERGRASS (SBN: 252705)
    Email: mpendergrass@buchalter.com
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213) 891-0700
Fax: (213) 896-0400

Attorneys for Plaintiff, WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association,<br><br>                    Plaintiff,<br><br>        v.<br><br>AEJ ASSOCIATES, LLC, a New Jersey limited liability company; TING-TAR WU, also known as STEVEN WU, an individual;  CHIA JING WU, also known as CATHERINE WU, an individual; LIHUI LO, also known as KITTY LO, an individual; ALEXANDER TSAY, an individual,<br><br>                    Defendants. | CASE NO.<br><br>**WELLS FARGO BANK'S COMPLAINT IN INTERPLEADER** |

Plaintiff Wells Fargo Bank, National Association ("Plaintiff" or "Wells Fargo"), a national banking association, states for its complaint in interpleader as follows:

## THE PARTIES AND JURISDICTION

1.      This is a suit in interpleader involving disinterested stakeholder Wells Fargo and claims to funds in the amount of $354,979.49 ("Subject Funds") by Defendants AEJ Associates, LLC, Ting-Tar Wu, Chia Jing Wu, Lihui Lo, and Alexander Tsay.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1335.  Wells Fargo hereby interpleads the Subject Funds, and upon filing this complaint, will deposit into the registry of this Court a check in this amount.

3.      At all times herein mentioned, Wells Fargo was and now is a nationally chartered bank with its head office in Sioux Falls, South Dakota.

4.      Wells Fargo is informed and believes, and on that basis alleges, that defendant AEJ Associates, LLC ("AEJ") is, and at all times herein mentioned was, a New Jersey limited liability company with its principal place of business in the City of Montville, New Jersey.

5.      Wells Fargo is informed and believes, and on that basis alleges, that defendant Ting-Tar Wu, also known as Steven Wu, is, and at all times herein mentioned was, an individual residing in the County of Orange, State of California. Wells Fargo is informed and believes, and on that basis alleges, that Steven Wu is or was an owner, member, or manager of AEJ.

6.      Wells Fargo is informed and believes, and on that basis alleges, that defendant Chia Jing Wu, also known as Catherine Wu, is, and at all times herein mentioned was, an individual residing in the State of Nevada.  Wells Fargo is informed and believes, and on that basis alleges, that Chia Jing Wu is or was an owner, member, or manager of AEJ.

7.     Wells Fargo is informed and believes, and on that basis alleges, that defendant Lihui Lo, also known as Kitty Lo, is, and at all times herein mentioned was, an individual residing in the County of Orange, State of California.  Wells Fargo is informed and believes, and on that basis alleges, that Lihui Lo is or was an owner, member, or manager of AEJ.

8.     Wells Fargo is informed and believes, and on that basis alleges, that defendant Alexander Tsay, is, and at all times herein mentioned was, an individual residing in the State of New Jersey.  Wells Fargo is informed and believes, and on that basis alleges, that Alexander Tsay is or was an owner, member, or manager of AEJ.

9.     At all times herein mentioned, each of the Defendants named in the caption of this Complaint, which is incorporated herein by this reference, was and is the agent, servant and employee of each of the other Defendants, and all of the things alleged to have been done by said Defendants were done in the capacity of and as agent of the other Defendants.

**VENUE**

10.     Venue is proper in this district as defendants Lihui Lo and Ting-Tar Wu reside within the Central District of California, Southern Division.  *See* 28 U.S.C. § 1397.

**GENERAL ALLEGATIONS**

11.     On or about July 17, 2014, Alexander Tsay opened two separate accounts for AEJ at Wells Fargo: (1) a general operating account (Acct. No. 347-XXXXXX5916-DDA) (the "Operating Account"); and (2) a savings account (Acct. No. 347-XXXXXX1037-DDA) (the "Savings Account").[1]  Alexander Tsay, Ting-Tar Wu, and Chia Jing Wu were designated as authorized signatories on both the AEJ Accounts.[2]

---

[1] The Operating Account and Savings Account are collectively referred to herein as the "AEJ Accounts."
[2] Alexander Tsay, Ting-Tar Wu, and Chia Jing Wu are collectively referred to herein as the "Tsay

**WELLS FARGO BANK'S COMPLAINT IN INTERPLEADER**

12.     According to a Share Purchase Agreement between Alexander Tsay and Lihui Lo dated March 2, 2015 ("Share Purchase Agreement"), Lihui Lo purchased all of the membership interests in AEJ and did so with Steven Wu's consent as "guarantor."   A copy of the Share Purchase Agreement (redacted of all personal information) is attached hereto as Exhibit 1.

13.     On or about March 20, 2015, at Lihui Lo's request, Wells Fargo removed the Tsay and Wu Defendants as authorized signatories, and Lihui Lo was added as an authorized signatory on the AEJ Accounts.

14.     On or about March 20, 2015, Lihui Lo withdrew the following funds from the AEJ Accounts: (1) $354,979.49 from the Operating Account; and (2) $29,700.10 from the Savings Account.   On that same date, Lihui Lo deposited funds in the amount of $384,679.59 into a Wells Fargo account at its Newport Coast branch (Acct. No. XXXXXX1021) ("Newport Account"), which Ms. Lo opened in the name of AEJ.

15.     On or about March 24, 2015, Wells Fargo received an "Affidavit of Check Fraud" (the "Affidavit") submitted by Chia Jing Wu on behalf of herself and her brother, Steven Wu, who both purported to be members of AEJ.   The amount claimed in the Affidavit is $354,979.49.   A copy of the Affidavit (redacted of all personal information) is attached hereto as Exhibit 2.

16.     Wells Fargo's internal investigation confirmed that the Subject Funds were transferred to Newport Coast branch by Lihui Lo, who claimed to be the sole member of AEJ.

17.     In response to the Affidavit, on or about June 1, 2015, Wells Fargo froze the Subject Funds in the Newport Account.   However, any funds in the Newport Account in excess of $354,979.49 remained accessible to the account holder.

and Wu Defendants."

18.    After the Affidavit was submitted and the Subject Funds were frozen, Wells Fargo received no further communication from any person apparently interested in the AEJ Accounts.  Accordingly, on or about June 24, 2015 Wells Fargo sent out Claim Withdrawal Letters to each of the parties asking them to withdraw their claim to the frozen funds in the Newport Account, but Wells Fargo received no response.

19.    On or about July 7, 2015, Wells Fargo once again sent letters to each of the Defendants asking them to withdraw their respective claims to the Subject Funds.

20.    On or about July 21, 2015, Wells Fargo received a letter from the Tsay and Wu Defendants' counsel, demanding that Wells Fargo release the Subject Funds to them.  Among other things, the Tsay and Wu Defendants allege that Lihui Lo was not a signatory on the Operating Account and that she wrongfully withdrew the Subject Funds.

21.    On or about July 22, 2015, Wells Fargo received a letter from Lihui Lo's counsel, demanding that Wells Fargo release the Subject Funds to her. Among other things, Lihui Lo alleges that she is the 100% owner of AEJ and that the claims in the Affidavit are false.

22.    After receiving demands from both Parties, Wells Fargo was informed by counsel for each of the Defendants that the Defendants had filed cross-action against each other that partially involved the Funds.  Wells Fargo inquired if there was any chance of resolution of the dispute.  On or about September 25, 2015, Wells Fargo's counsel received further communication from AEJ, Tsay and the Wu Defendants counsel regarding the disputed funds, and making further demand for the funds.

23.    Thereafter, Wells Fargo continued to attempt to reach a compromise in the action between the Defendants.  Further, Wells Fargo attempted to reach consensus on where this matter should be filed considering the other action between

the Parties is pending is State court. However, no consensus was reached, and the filing of this action is now required.

## CLAIM IN INTERPLEADER

### (As to all Defendants)

24.    Wells Fargo repeats and realleges all of the allegations contained in Paragraphs 1 through 23 above as though set forth in full here.

25.    Defendants have all asserted rights to the Subject Funds.

26.    Wells Fargo is indifferent with respect to which defendant is entitled to ownership/possession of the Subject Funds, and Wells Fargo claims no interest in the Subject Funds.

27.    Given that the respective claims made by the Defendants are adverse and conflicting, Wells Fargo is unable to safely determine to whom the Subject Funds should be released to and cannot pay any part of the Subject Funds without danger of being compelled to pay the same to other Defendants.

28.    Wells Fargo has incurred attorneys' fees and costs as a result of these proceedings.

## PRAYER FOR RELIEF

**WHEREFORE,** Wells Fargo prays for judgment as follows:

1.    That Defendants, and each of them, be ordered to interplead and litigate their respective rights and claims to the Subject Funds to be deposited by Wells Fargo with the Clerk of this Court;

2.    That Wells Fargo be discharged from any and all liability on account of the claims of each of the Defendants to the Subject Funds;

3.    That the Court enter its order restraining Defendants, and each of them, from instituting or furthering any prosecution of Wells Fargo in any court affecting the rights and obligations as between Wells Fargo and any of the parties to this interpleader until further order of this Court;

1         4.     That Wells Fargo be awarded costs and reasonable attorneys' fees to

2  be determined by the court; and

3         5.     For such other and further relief as this Court may deem just and

4  proper.

5

6  DATED:  December 1, 2015          BUCHALTER NEMER
                                      A Professional Corporation

7

8                           By: _____

9                               WILLIAM M. MILLER
                               MANCY PENDERGRASS

10                            Attorneys for Plaintiff
                          WELLS FARGO BANK, NATIONAL
                                 ASSOCIATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## SHARE PURCHASE AGREEMENT

THIS SHARE PURCHASE AGREEMENT (the "**Agreement**") is made and entered into as of March 2, 2015, by and between Alexander Tsay ("**Seller**"), Lihui Lo  ("**Buyer**"), and Steven Ting-Tar Wu ("**Guarantor**").

## RECITALS

A.     Seller is the holder of 100% shares (the "**Shares**") of AEJ Associates LLC, a New Jersey Limited Liability corporation (the "**Company**").   The Company is a direct and/or beneficial owner of _2941894__Taiwan shares _= 985062 US shares is  of Manhattan Hotel Group, Co., Ltd., an exempted company incorporated under the laws of the Cayman Islands ("**Manhattan**") that is in the process of an initial public offering on the Taiwan Stock Exchange. The us shares is  shares of Manhattan owed by the Company shall be referred to as "**Manhattan Shares**".

B.     Seller desires to sell to Buyer and Buyer desires to purchaser from Seller all of the Shares on the terms and conditions set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     **AGREEMENT TO PURCHASE AND SELL COMPANY AND SHARES.** Buyer agrees to purchase the Shares from Seller and Seller agrees to sell the Shares to Buyer for an aggregate purchase price of $985,062.00. In connection with this Agreement, Seller shall take all actions necessary to cause the Company to deliver to Buyer one or more certificates representing the ownership of Buyer of the Shares in the Company and/or the Manhattan Shares (including, without limitation, the execution of any documents required by the Taiwan Stock Exchange in connection with the transfer of the Manhattan Shares).  $300,000.00 of the foregoing sum of $985,062.00 shall paid by the Buyer to Seller within 3 business days of Seller's delivery to Buyer of a fully executed Agreement. Another $484,000.00 of the foregoing sum of $985,062.00 shall be paid by the Buyer to Seller within 7 business days of when Buyer revises the Company's operating agreement and article of incorporation to reflect this Agreement, files an amended certificate of formation reflecting this Agreement, and receives pertinent Federal and/or New Jersey governmental approval for the same, if necessary. The seller and buyer need transfer state article and statement , minutes in 3 months . The remaining $ 201,062.00 of the $985,062.00 sum shall be delivered to Seller within 7 business days after approval of pertinent Taiwan Stock Exchange authorities of the transfer of the Manhattan shares owed by the Company to Buyer. Buyer has absolute right to cancel this Agreement for any reason, including but not limited, the non-approval of the Shares transfer by pertinent Federal and/or New Jersey governing entities, or the non-approval of Manhattan shares transfer by pertinent Taiwan Stock Exchange authorities.

2.  **FURTHER ASSURANCES.**  At any time and from time to time after the date of this Agreement, and for no additional consideration, Seller shall execute and deliver to Buyer such other instruments and take such other action as Buyer may reasonably request to vest title to the Shares or Manhattan Shares more effectively in Buyer.  In addition, the Parties

EXHIBIT  1

agree to restructure the transactions contemplated by this Purchase Agreement as may be necessary to mitigate the effect of taxes.

3. **REPRESENTATIONS AND WARRANTIES OF SELLER.** The Company and Seller each represents and warrants to Buyer as follows:

3.1.   <u>Authorization</u>.  No action, consent, order, approval or authorization of any person or entity, other than the consent of the Company, is necessary or required in order to permit Seller to execute, deliver and perform this Agreement.

3.2.   <u>Binding Agreement</u>.  This Agreement is the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with the terms of this Agreement.

3.3.   <u>No Conflicts</u>.  The execution, delivery and performance by Seller of this Agreement and compliance by Seller with this Agreement have not resulted (and will not result) in any violation of, or be in conflict with, or invalidate, cancel or make inoperative, accelerate an obligation or result in the imposition of a lien or encumbrance under, interfere with, or constitute a default (whether with notice or lapse of time or both) under any law, charter, bylaw, partnership agreement, trust agreement, contract, indenture, mortgage, deed of trust, loan, permit, other agreement or instrument, judgment, decree or order to which Seller is a party or by which Seller is bound, or to which the Company is a party or by which the Company is bound.

3.4.   <u>Ownership</u>.  Seller is the lawful owner, of record and beneficially, of the Shares and has good and marketable title to such Shares, free and clear of any liens, claims or encumbrances.   Company is the lawful owner, of record and beneficially, of the Manhattan Shares and has good and marketable title to such shares, free and clear of any liens, claims or encumbrances.

3.5.  <u>No Prior Transfers</u>.  Neither Company or Seller has not previously assigned (collaterally or otherwise), sold, conveyed, transferred, encumbered, subjected to a security interest or hypothecated or purported or agreed to assign (collaterally or otherwise), sell, convey, transfer, encumber, subject to a security interest or hypothecate, all or any portion of any right, title or interest in the Shares.  Neither Company or Seller has not previously assigned (collaterally or otherwise), sold, conveyed, transferred, encumbered, subjected to a security interest or hypothecated or purported or agreed to assign (collaterally or otherwise), sell, convey, transfer, encumber, subject to a security interest or hypothecate, all or any portion of any right, title or interest in the Manhattan Shares.

3.6.   <u>No Debt</u>.  The Company has no outstanding debt, liability, or obligations to third parties.

3.7.   <u>No Pending Litigation</u>.  There are no actions, suits, arbitrations, claims or proceedings or investigations pending or, to the best knowledge of Seller, threatened (nor any basis therefor) against Seller or the Company which question or which would question, directly or indirectly, the validity or enforceability of this Agreement or which would have a material adverse effect on the business or assets of the Company, including the Manhattan Shares.  To the best knowledge of Seller, there are no orders, judgments or decrees of any Federal, state or other court or governmental authority or agency against the Company which could have a material adverse effect on the business or assets of the Company, including the Manhattan Shares.



EXHIBIT 2

3.8.   Bankruptcy. There are no attachments, levies, executions, assignments for the benefit of creditors, receiverships, conservatorships or voluntary or involuntary proceedings in bankruptcy or pursuant to any other debtor relief laws contemplated by or pending against Seller.

3.9.   Other Matters Relating to Shares and Manhattan Shares. The Shares are validly issued, fully paid and non-assessable, with no personal liability attaching to the ownership of such Shares. There are no warrants, options or agreements with respect to any class of capital stock of the Company, including, without limitation, agreements granting to any person rights to acquire any capital stock in the Company or agreements with respect to the voting of such capital stock. The Manhattan Shares are validly issued, fully paid and non-assessable, with no personal liability attaching to the ownership of such Manhattan Shares. There are no warrants, options or agreements with respect to the Manhattan Shares including, without limitation, agreements granting to any person rights to acquire the Manhattan Shares or agreements with respect to the voting of the Manhattan Shares.

3.1.   No Prior Transfers of Shares and Manhattan Shares. Neither Company or Seller has not previously assigned (collaterally or otherwise), sold, conveyed, transferred, encumbered, subjected to a security interest or hypothecated or purported or agreed to assign (collaterally or otherwise), sell, convey, transfer, encumber, subject to a security interest or hypothecate, all or any portion of any right, title or interest in the Shares. Neither Company or Seller has not granted any right of refusal or other preferential right to purchase the Shares or any portion of the Shares to any other person or entity. Neither Company or Seller has not previously assigned (collaterally or otherwise), sold, conveyed, transferred, encumbered, subjected to a security interest or hypothecated or purported or agreed to assign (collaterally or otherwise), sell, convey, transfer, encumber, subject to a security interest or hypothecate, all or any portion of any right, title or interest in the Manhattan Shares. Neither Company or Seller has not granted any right of refusal or other preferential right to purchase the Manhattan Shares or any portion of the Manhattan Shares to any other person or entity.

4.   **REPRESENTATIONS AND WARRANTIES OF BUYER.** Buyer represents and warrants to Seller as follows:

4.1.   Binding Agreement. This Agreement is the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with the terms of this Agreement.

4.2.   No Conflicts. The execution, delivery and performance by Buyer of this Agreement and compliance by Buyer with this Agreement have not resulted (and will not result) in any violation of, or be in conflict with, or invalidate, cancel or make inoperative, accelerate an obligation or result in the imposition of a lien or encumbrance under, interfere with, or constitute a default (whether with notice or lapse of time or both) under any law, charter, bylaw, partnership agreement, trust agreement, contract, indenture, mortgage, deed of trust, loan, permit, other agreement or instrument, judgment, decree or order to which Buyer is a party or by which Buyer is bound.

4.3.   No Pending Litigation. There are no actions, suits, arbitrations, claims or proceedings or investigations pending or, to the best knowledge of Buyer, threatened (nor any basis therefor) against Buyer which question or which would question, directly or indirectly, the validity or enforceability of this Agreement.



4.4.   <u>Bankruptcy</u>.  There are no attachments, levies, executions, assignments for the benefit of creditors, receiverships, conservatorships or voluntary or involuntary proceedings in bankruptcy or pursuant to any other debtor relief laws contemplated by or pending against Buyer.

4.5.   <u>Due Diligence</u>.  Buyer has been afforded access to the books, financial statements, records, contracts, documents and other information concerning the Company and the business and assets of the Company as Buyer has deemed necessary or advisable in evaluating the sufficiency of the Purchase Price under this Agreement.  Buyer has been afforded an opportunity to ask such questions as Buyer has deemed necessary or desirable in order to evaluate the merits and risks of the transactions contemplated by this Agreement and is fully satisfied with the answers received.  Buyer has performed his own due diligence with respect to this Agreement and is relying on that due diligence in entering into this Agreement and, except as specifically provided in this Agreement, is not relying on Seller, the Company, or the officers, directors, employees or affiliates of Company with respect to tax or other economic considerations. The Purchase Price and all other terms of this Agreement were arrived at through arm's-length negotiations and represent full and fair consideration for the Shares.

5.  **SURVIVAL OF REPRESENTATIONS AND WARRANTIES.**  The representations and warranties made by the parties under this Agreement shall survive the Closing, without regard to any investigation made by the other parties, and shall be fully enforceable at law or in equity against the warranting party and against the successors and assigns of such warranting party.

6.  **INDEMNITY AND GUARANTY.**  Each party agrees to indemnify, hold harmless, and defend the other party from any and all liabilities, judgments, claims, costs and expenses arising out of or in any way connected with the breach of any of the representations, warranties, covenants or agreements of such party set forth in this Agreement.  Guarantor shall be personally liable for any breach of the any of the representations, warranties, covenants or agreements of Seller set forth in this Agreement.  Guarantor also absolutely and unconditionally guaranties Seller's return of any money paid by Buyer pursuant to paragraph 1 in the event Buyer cancels this Agreement (should Seller fail to return any money paid by Buyer, Buyer can look to Guarantor for repayment of the same).

7.  **MISCELLANEOUS.**

7.1.   <u>Notices</u>.  All notices, requests and other communications provided for in this Agreement shall be in writing, unless otherwise specified in this Agreement, and shall be delivered personally to Seller or Buyer, by air courier, by facsimile (with receipt confirmed) or by first-class mail, postage prepaid, at the address set forth below:

Seller

_____

Buyer

_____

Guarantor

EXHIBIT

4

7.2.    Amendment and Waiver.  Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only with the written consent of both parties.

7.3.    Gender.  The parties agree that any use of words in any gender in this Agreement shall also refer to the masculine, feminine or neuter gender, as the case may require.

7.4.    Titles and Captions.   The parties agree that this Agreement contains Section, Paragraph or subparagraph titles or captions only as a matter of convenience to facilitate references in this Agreement and that the use of these titles and captions shall in no way limit, explain, define, amend, supplement or extend the text and the provisions of any Section, Paragraph or subparagraph of this Agreement.

7.5.    No Waivers.  A failure by any party to insist on the strict performance of any covenant or duty required by this Agreement or to pursue any remedy under this Agreement shall not constitute an express or implied consent or waiver of the breach of the remedy.  No breach of any provision of this Agreement can be waived unless in writing.  A waiver by any party of a breach of any of the provisions of this Agreement to be performed by the other party shall not be construed as a waiver of any succeeding breach of the same or any other provision.

7.6.    Governing Law.  The parties agree that the laws of the State of California, as such laws are applied to agreements between California residents entered into and performed entirely in California, govern this Agreement and all questions with respect to this Agreement, the interpretation of this Agreement and the rights and liabilities of the parties.

7.7.    Severance of Unenforceable Terms.  If any provision of this Agreement or the application of such provision to any party or circumstances shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been part of this Agreement.  Furthermore, in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

7.8.    Successors and Assigns.  Except as otherwise expressly provided in this Agreement, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties to this Agreement and shall inure to the benefit of and be enforceable by each person who shall be a holder of the Shares from time to time.

7.9.    Counterparts.  The parties may execute this Agreement in any number of counterparts and, as so executed, the counterparts shall constitute one and the same Agreement.  The parties agree that each such counterpart is an original and shall be binding upon all of the parties, even though all of the parties are not signatories to the same counterpart.

7.10.   <u>Merger Of Prior Agreements And Understandings</u>.   This Agreement contains the entire understanding among the parties, supersedes any prior or contemporaneous written or oral agreements, understandings and representations between such parties respecting the subject matter contained in this Agreement, and merges all prior negotiations concerning such subject matter into this Agreement.   The parties agree that there are no representations, agreements, arrangements or understandings, oral or written, between the parties relating to the subject matter of this Agreement which are not fully expressed in this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have executed this Agreement as of the date set forth above.

"SELLER"

Alexandar Tsay

"BUYER"

Lihui Lo

"GUARANTOR"

Ting-Tar (Steven) Wu

Acknowledged and accepted as to the representations and warranties:

AEJ Associates LLC, a New Jersey Limited Liability Company

By:
Print Name: Alexander Tsay
Title: President

Jane H. Agosto  3/3/15
Jane H Agosto
Notary Public
New Jersey
My Commission Expires 8-6-18
No. 2216539

OC 7475880v1

6

# EXHIBIT 2



Wells Fargo Bank
Liability Fraud and Claims Mgt
Check Fraud Claims MAC D4003-012
801 W. 4th Street
Winston-Salem, NC 27101

03/24/2015

AEJ ASSOCIATES LLC
34 VIA RUBINO
NEWPORT COAST, CA 92657-1607

Subject: Document needed to resolve fraud claim.
Claim #: 2015032300959

Dear AEJ ASSOCIATES LLC:

Thank you for contacting us on 03/23/2015 about the fraudulent check(s) on your account. To help us resolve your claim, please complete and return the enclosed affidavit within 20 days from the date of this letter.

**Please take the following actions:**

1. **Complete and sign the enclosed Affidavit of Check Fraud.**

2. **Provide the police report number and the suspect's name on the affidavit.**

3. **Return your completed document in the envelope provided or bring it to your local Wells Fargo store.**

If you have any questions, please contact us at 1-877-548-9230 Monday through Friday between 7:00 a.m. and 6:00 p.m. or on Saturday between 7:00 a.m. to 3:00 p.m. Pacific Time.

Thank you.

Laura Epstein - Financial Crimes Manager
Claims Assistance Center
Enclosure



2

13

**Affidavit of Check Fraud**

**WELLS FARGO**

| NAME OF CLAIMANT | WELLS FARGO ACCOUNT NUMBER | DATE |
|---|---|---|
| AEJ ASSOCIATES LLC | | 03/24/2015 |

| ☐ Signature Forged | ☐ Endorsement Forged | ☐ Counterfeit | ☐ Altered | ☒ Unauthorized Draft | ☐ Other |
|---|---|---|---|---|---|
| My signature on the face of the check(s) listed below is a forgery. I did not sign the check(s) and I did not authorize the signature. | My endorsement on the reverse of the check(s) listed below is a forgery, missing, or otherwise incorrectly endorsed. I did not sign the check(s) and/or I did not authorize the signature(s). | The check(s) are an imitation of checks drawn on my account. I did not create, sign, or authorize the creation or signature of the checks listed below. | The check(s) listed below have unauthorized alterations. I did not alter the payee or the amount, nor have I directly or indirectly authorized anyone to make alterations to the check(s). | I did not authorize or otherwise approve the creation or payment of the item. | Please Explain |

**Please include the following information for each fraudulent check:**

- If the check was altered, please use two lines and include the "as written" check information, as well as the "as paid" information.
- If you are claiming more than 1 check as "Endorsement Forged", please make photo copies of this form and submit each check with a separate signed affidavit page.
- If you have more than 4 checks to list (except Endorsement Forged), please use page 2 of this affidavit or attach a separate sheet.

| Check # | Date | Amount | Made payable to |
|---|---|---|---|
| 1212 | 03/20/2015 | $354,979.49 | I don't know |
| Check # | Date | Amount | Made payable to |
| Check # | Date | Amount | Made payable to |
| Check # | Date | Amount | Made payable to |

Check here if you have included additional items on an attached sheet or on the back of form: ☐

**CLAIM TOTAL:** $354,979⁰⁰

**BY SIGNING BELOW, YOU ARE MAKING THE FOLLOWING DECLARATIONS:**

- I did not receive any benefit or value from the proceeds of the check(s) listed above.
- I have not arranged with the person(s) who misused the check(s) listed above to be reimbursed for any portion of the proceeds of the check(s).
- I will cooperate in any investigation, promptly disclose any information requested by the bank, and if necessary, cooperate fully with any prosecution.
- I will testify to the truth of these statements in any case which may result from this affidavit.
- All information I have provided in this document is true.

*I DECLARE UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATED IS TRUE.*

Signature of Claimant (If a Business account, include your Title)   ~ T Wu   member of LLC

Date 03/25/2015

Address of Claimant

Phone Number

Place Notary Stamp Here

OFFICIAL SEAL
Nabila Walli
NOTARY PUBLIC - STATE OF NEW MEXICO
My Commission Expires: 05/21/17

**PAYEE/ENDORSER SIGNATURE** *(FORGED ENDORSEMENT CLAIMS ONLY)*

Signature of Payee/Endorser (If a Business account, include your Title)   Date

| NOTARY INFORMATION | |
|---|---|
| State of: New Mexico   County of: Bernalillo | Signature of Notary Public |
| Subscribed and sworn before me this 25th day of March (year) 2015 | |
| My commission Expires 09/26/18 | |



*DID2015-03-24=061224 727000*
2015032300959 (BANK USE ONLY)

2





**Questionnaire of Check Fraud**

5) Do you know who might have committed the fraud?
(If yes, please list their name and relationship to you here)

Wells Fargo employee

6) Please give details about this person including addresses and phone numbers. If a current or former employee, list employment dates.

the person who closed our account

7) Explain how the person that committed the fraud might have gained access to your account information.

He is Wells Fargo's employee

8) Please tell us anything else that might help us with the investigation.

N/A

*I DECLARE UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATED IS TRUE.*

| Signature of Claimant (If a Business account, include your Title) | Date |
|---|---|
| ‒Jf Wu , member of LLC | 03/25/2015 |
| Address of Claimant | Phone Number |



[CLM DP00  ...  ]

15

2



**Questionnaire of Check Fraud**

Please answer the following questions to assist us in our investigation:

1) When and how did you discover the fraud in your account?

Received the email from Wells Fargo on 03/21/2015 regarding Wells Fargo have updated our contact information.

Also we lost the on line banking ability to access our account. We believe only Wells Fargo official can close our on line access ability.

2) When and how did you report the fraud to Wells Fargo?

On 03/22/2015, my brother Steven Wu called Wells Fargo hot line 1-800-225-5935, spoke to Teishha (reference # XAR0812/44202), she mention that there is a Wells Fargo employee Scott Chec closed our account without the authorization from any of our 3 authorized signers.

3) Have you reported the fraud to law enforcement? If yes, please provide the agency, investigator name (if assigned), and the case number.

not yet.

4) What is your Drivers License number and State of issue and expiration date?

/



CT WELLS